IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VB ASSETS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMAZON.COM, INC., AMAZON.COM LLC, AMAZON WEB SERVICES, INC., A2Z DEVELOPMENT CENTER, INC. D/B/A LAB126, RAWLES LLC, AMZN MOBILE LLC, AMZN MOBILE 2 LLC, AMAZON.COM SERVICES, INC. F/K/A AMAZON FULFILLMENT SERVICES, INC. and AMAZON DIGITAL SERVICES LLC, | ) ) ) ) ) ) ) ) ) ) C.A. No. 19-1410 (MN) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

At Wilmington this 16th day of September 2020:

As announced at the hearing on August 20, 2020, IT IS HEREBY ORDERED that Defendants Amazon.com, Inc., Amazon.com LLC, Amazon Web Service, Inc., A2Z Development Center, Inc. d/b/a/ Lab126, Rawles LLC, AMZN Mobile LLC, AMZN Mobile 2 LLC, Amazon.com Service, Inc. f/k/a Amazon Fulfillment Services, Inc., and Amazon Digital Services LLC's (collectively, "Amazon") Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 25) is DENIED.

Amazon moved to dismiss the operative complaint in C.A. No. 19-1410 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent Nos. 8,073,681 ("the '681 Patent"), 9,015,049 ("the '049 Patent") (collectively "the Baldwin Patents"), 9,626,703 ("the '703 Patent" or "the Kennewick Patent"), 7,818,176 ("the '176 Patent"), 8,886,536

("the '536 Patent"), and 9,269,097 ("the '097 Patent") (collectively "the "Freeman Patents") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. Defendants' motion was fully briefed as of December 4, 2019, (*see* D.I. 26, 27, 28), and the Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motion as related to the § 101 arguments, (*see*, D.I. 51, 52).

The Court carefully reviewed all submissions in connection with Defendants' motion, heard oral argument (D.I. 56) and applied the following legal standard in reaching its decision:

## I. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

B.      **Patent-Eligible Subject Matter**

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent.  35 U.S.C. § 101.  The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101:  laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These three exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216.  A claim to any one of these three categories is directed to ineligible subject matter under § 101.  "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78.  First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that

3

the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

### 1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

### 2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The

inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish*, 822 F.3d at 1334.

## I. THE COURT'S RULING

The ruling to deny Defendants' motion under Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . thank you for the arguments today. I found them to be helpful. I am prepared to rule on the pending motion[]. I will not be issuing a written opinion, but I will issue an order stating my rulings. As I have done in other cases, before I get to the rulings, I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was briefing on the pending motion[], there were additional submissions, including those discussing what each party viewed as the most analogous case, and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.
>
> Now, as to my ruling. I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in earlier opinions, including in *Innovative Global Systems, LLC v. Keep Truckin, Inc.*, No. 19-641. I incorporate that law and adopt it into my ruling today, and I will also set it out in the order that I issue.

5

\*     \*     \*

Now I turn to *VB Assets*. Here we have six patents [– the '681 and '049 Patents (*i.e.* the Baldwin Patents), the '703 Patent (*i.e.* the Kennewick Patent, and the '176, '536, and '097 Patents (*i.e.* the Freeman Patents –] which generally relate to various aspects of computer voice recognition systems.

Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent-ineligible subject matter. After reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motion.

As I have done previously, first I want to address representativeness of the claims discussed. In Defendants' brief, they address one claim of each patent and refer to two of those claims as "the asserted and representative claim" for their respective patents with no other analysis as to how those claims (or any others) are actually representative. [(*See* D.I. 26 at 11, 15).]

Plaintiff, in its answering brief, disputes that the claims specified in Defendants' brief are representative of the other claims in the patents and offers some showing as to why they are not representative. [(*See* D.I. 27 at 9, 11, 13, 14-15).]

I find that Defendants' conclusory assertions that claims are representative are not sufficient, particularly in light of Plaintiff's response. And, thus, the only claims that I address today are the ones specifically mentioned in Defendants' motion: claim 41 of the '681 Patent, claim 11 of the '049 Patent, claim 30 of the '703 Patent, claim 27 of the '176 Patent, claim 44 of the '536 Patent, and claim 1 of the '097 Patent.

[Claim 41 of the '681 Patent claims:

41. A system for providing a cooperative conversational voice user interface, comprising:

- a voice input device configured to receive an utterance during a current conversation with a user; and;

- a conversational speech engine, wherein the conversational speech engine includes one or more processors configured to:

    - accumulate short-term shared knowledge about the current conversation, wherein the short-term shared knowledge includes knowledge about the utterance received during the current conversation;

6

    accumulate long-term shared knowledge about the user, wherein the long-term shared knowledge includes knowledge about one or more past conversations with the user;

    identify a context associated with the utterance from the short-term shared knowledge and the long-term shared knowledge;

    infer additional information about the utterance from the short-term shared knowledge and the long-term shared knowledge in response to determining that the utterance contains insufficient information to complete a request in the identified context;

    establish an intended meaning for the utterance within the identified identify a context based on the additional information inferred about the utterance; and

    generate a response to the utterance based on the intended meaning established within the identified context.

Claim 11 of the '049 Patent claims:

11. A system for facilitating conversation-based responses, the system comprising:

  one or more physical processors programmed with one or more computer program instructions such that, when executed, the one or more computer program instructions cause the one or more physical processors to:

    receive a natural language utterance during a conversation between a user and the system;

    identify a first model that includes short-term knowledge about the conversation, wherein the short-term knowledge is based on one or more prior natural language utterances received during the conversation;

    identify, based on the short-term knowledge, context information for the natural language utterance;

    determine, based on the context information, an interpretation of the natural language utterance; and

    generate, based on the interpretation of the natural language utterance, a response to the natural language utterance.

Claim 30 of the '703 Patent claims:

30. A system for providing voice commerce, the system comprising:

7

one or more physical processors programmed with computer program instructions which, when executed, cause the one or more physical processors to:

receive a user input comprising a natural language utterance;

provide, without further user input after the receipt of the user input, the natural language utterance as an input to a speech recognition engine;

obtain, without further user input after the receipt of the user input, one or more words or phrases recognized from the natural language utterance as an output of the speech recognition engine;

identify, without further user input after the receipt of the user input, a context based at least on the one or more words or phrases;

determine, without further user input identifying a product or service after the receipt of the user input, a first product or service to be purchased on behalf of a user based at least on the determined context;

obtain, without further user input identifying a payment information after the receipt of the user input, first payment information with which to pay for the product or service;

obtain, without further user input identifying shipping information after the receipt of the user input, first shipping information with which to deliver the product or service, wherein the first shipping information specifies a name or address of a recipient to which the product or service is to be delivered after the product or service is purchased; and

complete, without further user input identifying a product or service, payment information, or shipping information after the receipt of the user input, a purchase transaction for the first product or service based on the first payment information and the first shipping information.

Claim 27 of the '176 Patent claims:

27. A system for selecting and presenting advertisements in response to processing natural language utterances, comprising:

an input device that receives a natural language utterance containing at least one request at an input device;

a speech recognition engine coupled to the input device, wherein the speech recognition engine recognizes one or more words or

8

> > phrases in the natural language utterance, wherein to recognize the words or phrases in the natural language utterance, the speech recognition engine is configured to:
>
> > > map a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar; and
> >
> > > generate a preliminary interpretation for the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or more syllables includes the recognized words or phrases;
>
> > a conversational language processor coupled to the speech recognition engine, wherein the conversational language processor is configured to:
>
> > > interpret the recognized words or phrases, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance;
> >
> > > select an advertisement in the context established for the natural language utterance; and
> >
> > > present the selected advertisement via an output device.
>
> Claim 44 of the '536 Patent claims:
>
> 44. A computer-implemented method of providing promotional content related to one or more natural language utterances and/or responses, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising:
>
> > receiving, at the one or more physical processors, a first natural language utterance;
>
> > providing, by the one or more physical processors, a response to the first natural language utterance;
>
> > receiving, at the one or more physical processors, a second natural language utterance relating to the first natural language utterance;
>
> > identifying, by the one or more physical processors, requests associated with the second natural language utterance, wherein the requests include a first request to be processed by a first device associated with a user and a second request to be processed by a second device associated with the user,
>
> > determining, by the one or more physical processors, promotional content that relates to one or more of the first request or the second request; and

9

    presenting, by the one or more physical processors, the promotional content to the user.

Claim 1 of the '097 Patent claims:

1. A method for providing natural language processing based on advertisements, the method being implemented on a computer system having one or more physical processors executing computer program instructions which, when executed, perform the method, the method comprising:

    providing, by the computer system, an advertisement associated with a product or service for presentation to a user;

    receiving, at the computer system, a natural language utterance of the user; and

    interpreting, by the computer system, the natural language utterance based on the advertisement and, responsive to the existence of a pronoun in the natural language utterance, determining whether the pronoun refers to one or more of the product or service or a provider of the product or service.]

    One additional comment before I go through the claims. In the briefing, Plaintiff argued that the motion is premature because there may be claim construction disputes as to certain terms. In doing so, Plaintiff tells me how certain terms may be construed but offers nothing on whether there are disputes as to those constructions or, if there are, how those disputes would impact the analysis. [(*See* D.I. 27 at 3-4).] It does not ultimately matter here, but, for future reference, I will say that I agree with those cases that require parties making such arguments about claim construction to explain the dispute and how the dispute will impact the analysis in order to prevail. If you simply say what Plaintiff did here regarding claim construction, that will not convince me that the motion is premature.

    Now, let me turn to the "Baldwin Patents," which share a specification but have different claims. The parties make essentially the same arguments with respect to the eligibility of the claims of both of the Baldwin Patents. Having looked at the claims, however, it does not seem that the same analysis applies to each of the claims. So I will take them separately.

    First, claim 41 of the '681 Patent. At Step 1 of *Alice*, Defendants argue that claim 41 is directed to "the abstract idea of responding to a spoken request using shared information." [(D.I. 26 at 10).] And Defendants argue that the claims are like those found invalid in *Bridge and Post, Inc. v. Verizon Commc'ns, Inc.*[, 778 F.

App'x 882 (Fed. Cir. 2019)]. [(*See* D.I. 51).] Plaintiff argues that claim 41 is not directed to an abstract idea but instead to an improvement over prior voice recognition computer systems, one that is more intuitive with an improved user interface for speech recognition that makes inferences using short-term knowledge and long-term knowledge. [(D.I. 27 at 7).] Plaintiff argues that the inventors overcame problems with prior art "Command and Control systems by allowing a user to directly make a request to the system in a normal, conversational fashion." [(*Id.* at 7-8).]

I agree with Plaintiff. In the Court's view, Defendants have oversimplified claim 41 and characterized it at an improperly high level of abstraction, in contravention of the Federal Circuit's instruction in *McRO* and *Enfish*. [*See McRO*, 837 F.3d at 1313; *Enfish*, 822 F.3d at 1337.] Despite Defendants' arguments to the contrary, claim 41 is not like those in *Bridge and Post*. The focus of those claims was directed to tracking a user's computer network activity and using information gained about the user to deliver targeted media, such as advertisements. The claims used persistent identifiers to implement targeted marketing, which the Federal Circuit noted is a form of "'tailoring information based on provided data,'" which has previously been held to be an abstract idea. [778 F. App'x at 887 (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015)) (modifications omitted).]

Here, the focus of claim 41 is an improved user interface for speech recognition, not simply tailoring advertisements based on data provided. Some of the limitations are functional, but the claim is directed to making function better using short-term knowledge and long-term knowledge, improving the way speech recognition happens. That is not an abstract idea.

Because I find that claim 41 of the '681 Patent is not directed to an abstract idea, I do not reach Step 2 of the *Alice/Mayo* inquiry. [And again for that I cite to *Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1363.]

Next, we have claim 11 of the '049 Patent. At *Alice* Step 1, Defendants argue that, like claim 41, claim 11 claims "the abstract idea of responding to a spoken request using shared information." [(*E.g.*, D.I. 26 at 10).] Plaintiff counters that the claim "pertain[s] to a specific technological improvement," arguing that the specification "disclose[s] an Automatic Speech Recognizer ('ASR') to generate a preliminary interpretation and provide that preliminary interpretation to a conversational speech engine for further

11

processing." [(D.I. 27 at 6).] Plaintiff also argues that the "inventors overcame problems with Command and Control systems by allowing a user to directly make a request to the system in a normal, conversational fashion." [(*Id.* at 7-8).] The parties rely on the same purportedly analogous cases – *Bridge and Post* and *McRO*.

Here, claim 11 seems different to me than claim 41. I have concerns about this claim being framed in terms of functional language without any indication of how to achieve the result. But I cannot conclude at this stage that the claim is directed to an abstract idea – or, more particularly, to the abstract idea articulated by Defendants – instead of some improvement in technology.

Thus, when the claims are considered as a whole and based on the current record, I cannot agree with Defendants that the claims are directed to the abstract idea asserted. It may be, however, that further proceedings and a more developed record lends clarity to this issue. I will thus follow the approach of Judge Bryson in a similar situation while he was sitting by designation in *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.* in the Eastern District of Texas and deny the motion to dismiss. [No. 2:17-660-WCB-RSP, 2018 WL 5634231, at *5 (E.D. Tex. Oct. 31, 2018) (Bryson, J., sitting by designation) (on a motion to dismiss, finding that defendants failed to persuade the court that claims directed to an abstract idea at step one but leaving open possibility for further record to shed light on the issue).] And, in doing so, I am denying the motion with leave to renew it at summary judgment to the extent that the claim is still at issue and there are no factual issues precluding that.

And, just to be complete, given that Defendants have not persuaded me on the current record that the claims are directed to the abstract idea of responding to a spoken request using shared information, I need not address Step 2 of the *Alice/Mayo* analysis here. [*See Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1363.]

Now I turn to claim 30 of the "Kennewick Patent" or the '703 Patent.

Defendants argue that claim 30 "claims the abstract idea of responding to a spoken request by completing a purchase." [(*E.g.*, D.I. 26 at 15).] Plaintiff disagrees, arguing "the '703 Patent pertains to using 'context' to accurately identify speech." [(D.I. 27 at 10-11).] Context, in turn, Plaintiff argues, "connotes the accumulation of information in a single conversation, cross-modality awareness (e.g., awareness that the user providing voice input is also utilizing a web-interface) and potentially using cross-modality information to

12

build a better model for speech [recognition]." [(*Id.* at 10).] That use of context for voice communications, according to Plaintiff, is "a specific technological improvement over the prior art." [(*Id.* at 11).]

Here, I agree with Defendants. Claim 30 is directed to a spoken request to buy something. It is claiming organizing human activity, an abstract idea. And it claims a result in a functional manner without sufficient description of how the claimed result is achieved. Fundamentally, the claim is focused on "determin[ing]" an item or service to be purchased "obtain[ing]" payment information, "obtaining" shipping information, and "complet[ing]" the purchase. This is consistent with the specification, which confirms that its invention generally relates to "systems and methods for preparing and/or completing checkout of product or service purchases via a single utterance." ['703 Patent col. 1 ll. 14-17.]

The remaining limitations – for example, "recogniz[ing]" one or more words or phrases from a natural language utterance and "identify[ing] . . . context based at least on" those words or phrases – do not offer any concrete technological improvements, but merely claim implementation of the abstract idea. In that way, claim 30 is like the ones rejected [in] *Bridge and Post*.

Additionally, unlike the claims in *McRO*, which the Federal Circuit found sufficient because their "incorporation of the claimed rules, not the use of the computer, . . . improved the existing technological process by allowing the automation of further tasks," [837 F.3d at 1314 (citations and modifications omitted),] claim 30 provides no indication of how "one or more words or phrases" are to be "recognize[d]" nor how "context" based on those words or phrases is to be "identif[ied]." And, despite its argument, Plaintiff points to no place in the specification or claim where "context" is described or defined in the manner it argues should be applied.

Turning to Step 2 of *Alice*, this claim also has issues at this step that concern me given the functional claiming. And, it may be the result of moving on so many patents, but in the briefing the parties offered just a paragraph or two on this step and today Plaintiff made some additional arguments that there are factual issues. So I think that where I come out is that my gut tells me that Defendants are right and this claim has a problem. But, given the arguments, I cannot make a finding at Step 2 as to whether there is or is not a factual issue. Thus, despite my current leanings, I cannot grant the motion and find this claim ineligible on this record.

Next, we have the three "Freeman Patents." Again, the briefing and the argument on these patents was largely the same for each of the claims. As with the Baldwin Patents, however, I have looked carefully at the claims, and my analysis for at least one of the patents differs from the other two.

So let's start with that patent – the '176 Patent and claim 27.

At Step 1, Defendants assert that claim 27 is directed to the abstract idea of "responding to a spoken request with an advertisement." [(*E.g.*, D.I. 26 at 17).] Plaintiff counters that the prosecution history of the '176 Patent "confirm[s] that the claim[] pertain[s] to a specific technological improvement" – namely, "using a speech recognition engine to map 'phonemes' to 'syllables' and coupling it with a conversational language processor." [(D.I. 27 at 12 (citing D.I. 22 ¶¶ 107-108)).]

Here, I agree with Plaintiff – claim 27 is not directed to an abstract idea. In short, claim 27 is akin to those upheld by the Federal Circuit in *McRO*. The '176 Patent describes problems with prior advertisement systems based on voice recognition and, in particular, the inability to engage users in a productive, cooperative dialogue to resolve requests, instead forcing users to use a fixed set of commands or keywords. [*E.g.*, '176 Patent col. 1 ll. 32-49.] Additionally, it discusses how the invention solves that inability by mapping phonemes to syllables and providing preliminary interpretations based on that mapping to a conversational language processor for interpretation. [*E.g.*, *id.* col. 3 ll. 28-65.] That specific solution is the focus of claim 27. Like the claims in *McRO*, claim 27 may extend to a "genus" of methods, but that genus is limited to methods having specific, common, captured characteristics. [*See McRO*, 837 F.3d at 1313-15.] Thus, contrary to Defendants' suggestion, when looked at as a whole claim 27 is directed to a patentable, technological improvement over the existing voice user interfaces. The claim uses limited methods in a process "specifically designed to achieve an improved technological result in conventional industry practice." [*See id.* at 1316.] Under *McRO*, that is sufficient. [*Id.*]

Next, we turn to claim 44 of the '536 Patent and claim 1 of the '097 Patent.

At Step 1, Defendants and Plaintiff make essentially the same arguments that they made for the '176 Patent. [(*See* D.I. 26 at 17; D.I. 27 at 12).] Defendants assert that the claims are directed to providing ads in response to a voice input. Plaintiff disagrees for

14

the reasons previously stated and, in its papers, additionally noted that the applicant in the '536 Patent overcame the examiner's rejection by adding the concept of "domain agents" to certain claims, which "pertains to having separate software processes configured to interpret voice for specific domains such as navigation, music, a specific user, global users, advertising, e-commerce[,] etc."  [(D.I. 27 at 13-14).]  At the hearing, however, Plaintiff acknowledged that claim 44 does not claim "domain agents" and shifted its focus to the combination of multiple utterances and multiple requests processed by different devices and then determining the promotional material related to one of those requests.

For the '097 Patent, Plaintiff argues that claim 1 is aimed at solving a particular shortcoming of the prior art because it focuses on identifying pronouns from the context rather than disregarding pronouns due to their inherent ambiguity, as prior art did.  [(*Id.* at 14).]

Here, I agree with Defendants that claim 44 of the '536 Patent and claim 1 of the '097 Patent are directed to abstract ideas – namely, providing promotional content in response to natural language utterances and processing natural language responses to promotional content based on pronouns, respectively.

The recited steps of claim 44 – "receiving" user requests, "identifying" what has been requested, ["providing" a response to the request(s),] "determining" promotional content that relates to the request(s), and "presenting" the related promotional content to the user – claim a computer implementation of targeted marketing.  As I have already noted, targeted marketing, the Federal Circuit has told us, "is a form of 'tailoring information based on provided data,'" which, in turn, is an abstract idea. [*Bridge and Post*, 778 F. App'x at 887 (quoting *Intellectual Ventures I LLC*, 792 F.3d at 1369 (Fed. Cir. 2015) (modifications omitted)).]

Similarly, the steps of claim 1 of the '097 Patent – "providing" an advertisement, "receiving" a user response, and "interpreting" the response – are nothing more than the first half of targeted marketing: accumulating data about how a person interacts with an advertisement or product.  As the Federal Circuit has stated, "claims related to 'customizing information based on (1) information known about the user and (2) . . . data' are directed to abstract ideas," whether the data used is specific – like use of a "pronoun" – or not.  [*Id.* at 887-88 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).]

15

At Step 2 of *Alice*, Defendants argue claim 44 of the '536 Patent and claim 1 of the '097 Patent are not inventive because they purportedly recite "result-oriented functions." [(D.I. 26 at 18 n.7; D.I. 28 at 10).] Plaintiff counters by pointing again to the incorporation of the multiple utterances and multiple requests, as well as the ordered combination of steps. Plaintiff further asserts it alleges, in its First Amended Complaint, that those concepts were not routine, conventional, or well-understood. [*E.g.*, D.I. 27 at 19-20).] The Court agrees with Plaintiff.

As to claim 1 of the '097 Patent, the First Amended Complaint alleges, with support provided by the prosecution history, that focusing on the use of pronouns in a natural language utterance in the context of a preceding advertisement was not conventional, routine, or well-understood in the art, [(*e.g.*, D.I. 22 ¶ 117-18),] and the specification does not appear to undermine that. Thus, under *Berkheimer*, there appear to be factual issues that preclude dismissal.

Similarly, as to '536 Patent, the First Amended Complaint alleges that the '536 Patent describes and claims concepts that are captured in claim 44. [(*Compare* D.I. 22 ¶ 110, *with* '536 Patent cl. 44).] Additionally, it further alleges that the known prior art "neither taught" the method claimed in claim 44, "nor expressed any appreciation for the substantial advantages associated with" that method and, thus, "[i]n this regard, using [that method] was not well-understood, routine, or conventional and stands in sharp contrast to the conventional and routine approach of existing systems that did not allow a user to directly issue requests." [(D.I. 22 ¶ 111).] Again, there are factual issues that preclude dismissal.

So I will deny Defendants' motion as to all of the claims addressed.

And, in doing so, I will say that there are at least two claims that survive a 101 challenge before me. But I do understand the concerns that Defendants have about some of these claims. As I understand the Federal Circuit case law as of today, however, *Berkheimer* tells me that if Plaintiff plausibly alleges factual allegations that are not contradicted by the patent specification, then I have to let the case go forward on those claims.

So, I suppose if those claims are still at issue when we get to summary judgment, you can raise the issues again when there is a more developed record. But if you do come back on summary judgment, I will expect the arguments to be tailored to asserted

claims and I will expect that Defendants, if they wish to prevail, will do a better job at convincing me that any particular claim is representative of any others.

*Maryellen Noreika*
The Honorable Maryellen Noreika
United States District Judge