# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VB ASSETS, LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC., AMAZON.COM LLC, AMAZON WEB SERVICES, INC., A2Z DEVELOPMENT CENTER, INC. d/b/a LAB126, RAWLES LLC, AMZN MOBILE LLC, AMZN MOBILE 2 LLC, AMAZON.COM SERVICES, INC. f/k/a AMAZON FULFILLMENT SERVICES, INC., and AMAZON DIGITAL SERVICES LLC,<br><br>               Defendants. | C.A. No. 1:19-cv-01410-MN<br><br>**REDACTED PUBLIC VERSION** |

## OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE UNRELIABLE TESTIMONY OF VB ASSETS' DAMAGES EXPERT BRETT REED

*Of counsel:*

J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Vigen Salmastlian, CSB No. 276846
Allen Wang, CBS No. 278953
Johnson Kuncheria, CSB No. 335765
Min Wu, CSB No. 307512
Jeffrey A. Ware, CSB No. 271603
Rebecca A.E. Fewkes, CSB No. 209168
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

Dated: February 3, 2023

ASHBY & GEDDES, P.A.
Steven J. Balick (#2114)
sbalick@ashbygeddes.com
Andrew C. Mayo (#5207)
amayo@ashbygeddes.com
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Counsel for Defendants*
*Amazon.com, Inc., Amazon.com LLC, Amazon Web Services, Inc., A2Z Development Center, Inc. d/b/a Lab126, Rawles, LLC, AMZN Mobile LLC, AMZN Mobile 2 LLC, Amazon.com Services, Inc. f/k/a Amazon Fulfillment Services, Inc., and Amazon.com Services LLC*

## TABLE OF CONTENTS

                                                                         **Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF ARGUMENT ........................................................................................... 1

III. FACTUAL BACKGROUND .............................................................................................. 2

    A. The Asserted Patents and Accused Technology ...................................................... 2

    B. Mr. Reed's Opening Damages Report ..................................................................... 3

    C. Mr. Reed's Reply Damages Report .......................................................................... 6

IV. ARGUMENT ....................................................................................................................... 7

    A. Mr. Reed's damages models do not value the alleged contribution of the patented "technology." .............................................................................................. 8

    B. That Mr. Reed can make a ▮▮▮▮▮ math error and change his assumptions to arrive at the same result shows that his analysis is arbitrary, flawed, and unreliable. ................................................................................................ 10

V. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amazon.com, Inc. v. VB Assets, LLC*,
 IPR2020-01346, 2022 WL 320531 (PTAB Feb. 1, 2022) ........................................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ................................................................................................... 2, 7, 10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ................................................................................... 2, 8, 9

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) .................................................................................................................7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 711 F.3d 1348 (Fed. Cir. 2013) ................................................................................................7

**STATUTES AND RULES**

35 U.S.C. § 284 ..............................................................................................................................8

Fed. R. Evid. 702 ............................................................................................................... 2, 7, 10

## TABLE OF EXHIBITS[1]

| No. | Exhibit |
|-----|---------|
| 1 | Opening Expert Report of Brett L. Reed, served on August 15, 2022 ("Reed Op. Rep.") |
| 2 | Reply Expert Report of Brett L. Reed, served on October 14, 2022 ("Reed Reply Rep.") |
| 3 | Deposition transcript of Brett L. Reed, taken on December 12, 2022 ("Reed Dep. Tr.") |
| 4 | Rebuttal Expert Report of Dr. Michael T. Johnson, served on September 22, 2022 ("Johnson Reb. Rep.") |
| 5 | Rebuttal Expert Report of Keith R. Ugone, Ph.D., served on September 22, 2022 ("Ugone Reb. Rep.") |
| 6 | Opening Expert Report of Nathaniel Polish, Ph.D., served on August 15, 2022 ("Polish Opening Report") |
| 7 | ▉▉▉▉▉▉▉▉▉▉▉ (AMZ_VB_00342253– AMZ_VB_00342259) |
| 8 | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (AMZ_VB_00490726 – AMZ_VB_0000490760) |
| 9 | Deposition transcript of Rajiv Mehta, taken on May 19, 2022 ("Mehta Dep. Tr.") |
| 10 | June 3, 2022 email from I. Liston to V. Salmastlian. |

---

[1] Exhibits are attached to the accompanying Declaration of Jeffrey A. Ware

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff VB Assets, LLC ("VB Assets") filed this patent infringement action against Defendants[2] on July 29, 2019. (D.I. 1.) VB Assets amended its complaint on October 9, 2019. (D.I. 22.) It originally asserted six patents. The Patent Trial and Appeal Board found one patent invalid, which VB Assets then withdrew.[3] *Amazon.com, Inc. v. VB Assets, LLC*, IPR2020-01346, 2022 WL 320531, at *16 (PTAB Feb. 1, 2022). VB Assets now alleges literal infringement of 41 claims across five patents—U.S. Patent Nos. 8,073,681 (the "'681 patent"), 7,818,176 (the "'176 patent"), 8,886,536 (the "'536 patent"), 9,269,097 (the "'097 patent"), and 9,626,703 (the "'703 patent") (collectively, the "asserted patents"). No pretrial conference or trial date has been set. (D.I. 172; D.I. 179.)

## II. SUMMARY OF ARGUMENT

VB Assets seeks reasonable royalty damages of ▓▓▓▓▓▓ for purported infringement of the asserted patents, each of which relates to responding to voice requests. This demand relies on the opinion of damages expert Brett Reed, who applies a "cost savings" approach. Mr. Reed assumes that Amazon 1) would lose Alexa users if unable to use the claimed inventions, 2) could recover these customers only by selling *more* of the accused Alexa-enabled devices at a loss, and 3) that this "cost" reflects the value of the claimed inventions. The model Mr. Reed initially devised to determine this cost included a math error so egregious that it overstated the claimed damages by ▓▓▓▓▓▓▓▓▓▓. When Amazon's expert called out this error, Mr. Reed

---

[2] Defendants are Amazon.com, Inc.; Amazon.com LLC; Amazon Web Services, Inc.; A2Z Development Center, Inc. d/b/a Lab126; Rawles LLC; AMZN Mobile LLC; AMZN Mobile 2 LLC; Amazon.com Services, Inc. f/k/a Amazon Fulfillment Services, Inc.; and Amazon Digital Services LLC (collectively "Amazon").

[3] VB Assets withdrew U.S. Patent No. 9,015,049 on June 3, 2022. (Declaration of Jeffrey A. Ware in Support of Defendants' Motion to Exclude The Unreliable Testimony of VB Assets' Damages Expert Brett Reed, Ex. 9, June 3, 2022 email from I. Liston to V. Salmastlian.)

acknowledged it, but refused to simply correct it. Instead, he concocted a different model, with new and unsupportable assumptions, that measures benefits Amazon derived from █████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████. Put simply, █████ has no conceivable connection to the asserted patents: VB Assets alleges that Amazon infringed the asserted patents years *before* the launch of █████, and █████ encouraged customers to use ██████████ that are not accused of infringement. In improperly calculating damages based on █████, Mr. Reed violates fundamental Federal Circuit law that patent damages must reflect "the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Not only does Mr. Reed's new model violate Federal Circuit law by valuing contributions unrelated to the asserted patents, it also magically results in the *same* inflated damages figure Mr. Reed calculated in his *original* report based on an admitted math error. That Mr. Reed can change his methodology and arrive at the same desired outcome initially predicated on a math error underscores that his assumptions and analysis are arbitrary, flawed and unreliable—not "the product of reliable principles and methods" as Fed. R. Evid. 702 requires. The Court should exercise its gatekeeping responsibility under *Daubert* and exclude Mr. Reed's testimony.

### III. FACTUAL BACKGROUND

#### A. The Asserted Patents and Accused Technology

VB Assets asserts claims of five patents, across three patent families, each generally relating to systems and methods for responding to a voice utterance, including by offering a voice advertisement or identifying a product for purchase. It accuses Amazon's Alexa, including certain Alexa Shopping features, and Amazon's Alexa-enabled devices (*i.e.*, Echo, Fire TV, and Fire

Tablet devices) of infringing these patents. (Ex. 1, Reed Op. Rep. at 36-37.) VB Assets alleges that the Alexa voice service infringes the '681 patent, which relates to the use of shared knowledge from past and present conversations to recognize and respond to voice utterances. (Ex. 4, Johnson Reb. Rep., ¶¶ 84-92, 95.) It alleges that Alexa Shopping infringes the '176, '536, and '097 patents (collectively, "Voice Ad patents"), which generally relate to targeted advertising based on a voice utterance, and the '703 patent, which generally relates to identifying and completing a purchase of a product in response to a voice utterance. (*Id.* ¶¶ 95, 139-44.)

### B. Mr. Reed's Opening Damages Report

Mr. Reed submitted his opening damages report on August 15, 2022. (Ex. 1, Reed. Op. Rep.) In this report, Mr. Reed estimates reasonably royalty damages of ▮▮▮▮▮▮ from 2015 to 2023. (*Id.* at 5, 177, Tab 8.) Mr. Reed arrives at this estimate using a so-called "cost savings" approach, attempting to estimate the savings Amazon enjoys as a result of the purported use of the claimed inventions. (*Id.* at 112.) In Mr. Reed's view, the asserted patents improve the customer experience, and Amazon benefits by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[4] (*Id.* at 112).

Mr. Reed begins his analysis by extrapolating from the opinion of VB Assets' technical expert, Dr. Polish, that Amazon's purported use of the '681 patent enables Alexa to reduce all Alexa dialogs by an average of ▮ turns,[5] and that the Voice Ad and '703 patents enable Alexa Shopping to reduce interactions by another ▮ turns on average. (Ex. 1, Reed Op. Rep. at 116

---

[4] Though Amazon does not seek exclusion on this basis, Mr. Reed's assumption that Amazon would prefer to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—is one of several improper assumptions that renders his analysis unreliable. (Ex. 5, Ugone Reb. Rep., ¶ 248.)

[5] The first "turn" in an Alexa dialog is the user's initial request, the second "turn" is the user's subsequent response to Alexa's response, and so forth. (Ex. 4, Johnson Reb. Rep., ¶ 79.)

n.323, 139). Mr. Reed purports to measure the cost to Amazon of the extra turns that Dr. Polish claims would be required without the asserted patents. (*Id.* at 160-77.)[6]

Mr. Reed relies on an ███ that states that, at the beginning of 2018, Alexa Shopping and Alexa interactions differed by an average of ██ turns: ███. (Ex. 1, Reed Op. Rep. at 139; *see also* Ex. 7 (AMZ_VB_00342253 at 254 (███ From there, Mr. Reed calculates that Alexa Shopping had a ███ growth rate than Alexa overall between Q1 2017 and Q1 2018. (Ex. 1, Reed Op. Rep. at 139, Tab-16). He ascribes both Alexa Shopping's ███ and Alexa's corresponding ███ to this purported ██-turn difference:



(*Id.* at 139-40 (emphasis added); *see also id.* at Tab 16). Mr. Reed uses this ██ difference in growth rates from 2017 to 2018 as a proxy for the contribution of the asserted patents, despite admitting in deposition that during this comparison period Alexa and Alexa Shopping both offered the features that VB Assets accuses of infringing the patents. (Ex. 3, Reed Dep. Tr. 85:3-86:2.)

Mr. Reed contends that ███ led to the ██-turn difference, and in turn, the ██ lower user growth, which he attributes to the patents.

---

[6] Mr. Reed extrapolates his average 1.5-turn increase assumption for *all* Alexa and Alexa Shopping dialogs based on Dr. Polish's opinion that Amazon's identified non-infringing alternatives would result in an increase of 1-2 turns limited to specifically accused functions. (*See* Ex. 1, Reed Op. Rep. at 116 n.323; Ex. 6, Polish Op. Rep. ¶¶ 758-72.)

{01879377;v1 }  4

(Ex. 1, Reed Op. Rep. at 139). But he performs no analysis to connect Alexa Shopping's purported ▮ to the asserted patents or the ▮ number of turns. Mr. Reed also conveniently ignores that people use Alexa and Alexa Shopping differently, and those differences— ▮ ▮ —contribute to the difference in turn rates. For example, unlike Alexa Shopping interactions, Alexa interactions typically involve single commands or questions, like "what's the weather," "what time is it," "set a timer for 10 minutes," "what is the capital of Delaware," or "play the Beatles." (*See* Ex. 5, Ugone Reb. Rep. at ¶ 20.c.iii.) By contrast, Alexa Shopping seeks to engage the user in a multistep process that includes searching, selecting, and purchasing items on the Amazon.com retail site.

Moreover, Mr. Reed uses his calculated ▮ growth rate reduction for ▮ as the starting point for his damages model for *all* of the asserted patents—including his damages estimates for the '681 patent, which VB Assets asserts against all Alexa use, and for the Voice Ad and '703 patents, which VB Assets asserts against features of Alexa Shopping. For the '681 patent, Mr. Reed starts with the ▮ lower ▮ growth rate, "apportions" ▮ of that loss to the "reduced turns" enabled by the patent, and arrives a ▮ (Ex. 1, Reed Op. Rep. at 163). Mr. Reed then multiplies ▮ —the average contribution profit loss for ▮ ▮ during the damages period. (*Id.* at 163-64.) Mr. Reed then multiplies the resulting ▮ per-unit royalty by his royalty base—the annual increase in active U.S. Alexa users from 2015 to 2023. (*Id.* at 165, Tab 10.) Using this methodology, Mr. Reed estimates a royalty of ▮ million over this period, before applying an annual ▮ royalty cap, resulting in claimed damages of ▮ . (*Id.*) For the Voice Ad and '703 patents, Mr. Reed calculates a per-unit royalty rate of ▮ by multiplying the same "apportioned" ▮ by a purported cost savings of ▮ per Alexa Shopping customer. (*Id.* at 164.) Mr. Reed arrives

at the ▮ cost savings by assuming that, to acquire a new Alexa Shopping customer, Amazon would have to offer promotional benefits, consisting of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (*Id.* at 173 n.415.) Mr. Reed multiplies this rate by his royalty base, the annual growth of Alexa Shopping purchasers to arrive at ▮▮▮▮▮▮ royalty for the Voice Ads patent family (2016-23) and a ▮▮▮▮▮▮ royalty for the '703 patent. (*Id.* at 178-79, Tabs 11 & 12.)

### C. Mr. Reed's Reply Damages Report

In his reply report, Mr. Reed concedes that the ▮ lower active user growth rate he calculated in his opening report, and on which his entire analysis depends, reflected an egregious "math error," and, calculated correctly, this figure would be only ▮. (Ex. 2, Reed Reply Rep. at 11-12, 18, Tab 16-R.) Indeed, leaving all other assumptions and inputs to his model unchanged, correcting this math error reduces Mr. Reed's estimated damages by *73%*—▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 5, Ugone Reb. Rep. ¶¶ 232-34, 268 b., e.. 269.) Mr. Reed, however, refused to simply correct his admitted error, and intends to present his inflated ▮▮▮▮ royalty at trial. (Ex. 2, Reed Reply Rep. at 18-21; Ex. 3, Reed Dep. Tr. 56:9-58:5). To do so, Mr. Reed concocts new assumptions and a new methodology.

To get back to the ▮ lower growth rate that drives all of his damage estimates, Mr. Reed abandons actual data and instead makes up his own. He *increases* the user growth rate of ▮▮ ▮▮ by applying an "expected growth" multiplier of ▮ per year, and then compares this adjusted growth rate "benchmark" to the unadjusted growth rate of ▮▮▮▮, which, not coincidentally, results in the same ▮ difference he calculated before. (*Compare* Ex. 2, Reed Reply Rep. at Tab 16-R *with* Ex. 1, Reed Op. Rep. at Tab 16; *see also* Ex. 2, Reed Reply Rep. at 19-21.) Mr. Reed justifies this new assumption by arguing that ▮▮▮▮ *should* have grown by ▮ between 2017 and 2018, because ▮▮▮▮▮▮ grew at that rate between 2019 and

2021, a period *after* the launch of the so-called ▆▆▆▆▆▆▆▆. (Ex. 2, Reed Reply Rep. at 20.)

Amazon launched the ▆▆▆▆▆▆ in late-2018 to ▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." (Ex. 1, Reed Op. Rep. at 53 n.169 (quoting Ex. 7 AMZ_VB_00342253 at 254).) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (*Id*. at 58 n.180 (quoting Ex. 7 AMZ_VB_00342253 at 254).) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[7] (Ex. 8 (Alexa Shopping ▆▆▆▆▆▆▆▆▆ (AMZ_VB_00490726 at 737).) Mr. Reed inputs that growth due to ▆▆ ▆▆▆▆▆▆ into his calculation of the growth rate differential to get to the ▆▆ starting point in his original model, and in turn the damages estimate in his opening report. (Ex. 2, Reed Reply Rep. at 20; Tab 16-R.)

IV.   **ARGUMENT**

Under Federal Rule of Evidence 702, expert testimony must "be the product of reliable principles and methods applied to sufficient facts or data." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013). This standard places a special obligation upon the court to act as a "gatekeeper" and ensure that expert testimony "is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*

---

[7] Alexa Shopping refers to a wide range of shopping features, many of which do not require any Alexa interaction. (Ex. 8, Mehta Dep. Tr. at 37:5-38:7 (describing Alexa Shopping features that do not require a voice utterance).)

*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Mr. Reed's damages opinions are both irrelevant and unreliable, and thus inadmissible.

      A.    **Mr. Reed's damages models do not value the alleged contribution of the patented "technology."**

"[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the *value attributable to the infringing features of the product, and no more.*" *Ericsson*, 773 F.3d at 1226 (emphasis added). "As a substantive matter, it is the '*value of what was taken*' that measures a 'reasonable royalty' under 35 U.S.C. § 284." *Id.* (citation omitted) (emphasis added). "*What is taken* from the owner of a utility patent (for purposes of assessing damages under § 284) is *only the patented technology*, and so the value to be measured is *only the value of the infringing features of an accused product.*" *Id.* (citation omitted) (emphasis added). Mr. Reed's analysis violates this fundamental tenet of Federal Circuit damages law, and does not reflect the contribution of the asserted patents.

First, the ▉ reduced growth rate that Mr. Reed estimates in his *opening* report has nothing to do with the asserted patents. Mr. Reed arrives at the ▉ figure by calculating the difference in actual user growth rates between Alexa overall and Alexa Shopping between 2017 and 2018, which he attributes to the purported ▉-turn difference between Alexa and Alexa Shopping. This ▉ calculated difference reflects an admitted math error that inflates his claimed damage by ▉. But, just as importantly, over the 2017-2018 time frame, *both* Alexa and Alexa shopping offered the very features that VB Assets accuses of infringement. (Ex. 3, Reed Dep. Tr. 85:3-86:2.) Thus, these accused features, which VB Assets claims the asserted patents enable, could *not* have caused Alexa's ▉ compared to Alexa Shopping or Alexa Shopping's ▉ growth compared to Alexa's ▉ growth rate from Q1 2017 to Q1 2018. Reed is *not* comparing one *with* the patented benefit to the other *without*.

Second, the new model in Mr. Reed's reply report values ███, not the purported contribution of the asserted patents. *See Ericsson*, 773 F.3d at 1226. Indeed, in the reply report, Mr. Reed tries to resurrect his ███ growth difference for 2017-18 by arguing that Alexa users *should* have grown by ███ the average annual user growth of Alexa Shopping from 2019 to 2021 after the launch of Amazon's ███. But ███ has nothing to do with the asserted patents: it encouraged ███

███. (Ex. 1, Reed Op. Rep. at 53 n.169 (quoting Ex. 7 AMZ_VB_00342253 at 254): *id.* at 58 n.180 (quoting Ex. 7 AMZ_VB_00342253 at 254).) By contrast, the asserted patents are each directed to *voice interactions*. (*See* D.I. 22, ¶¶ 56, 76, 93-99.) In fact, ███ drove a significant portion of the Alexa Shopping user growth from 2019 to 2021 that Reed injects back into the 2017-18 calculation as "expected growth." ███

███. (Ex. 8 (███

███ (AMZ_VB_00490726 at 737).) Mr. Reed's attribution of ███

███ to the asserted *voice* patents violates well-established Federal Circuit law and is inadmissible. *Ericsson*, 773 F.3d at 1226.

Third, the ███ turn reduction Mr. Reed relies on as a proxy for the contribution of the asserted patents makes no sense. Indeed, even if it were true that ███ increased the number of turns for *Alexa Shopping* by 1.5 turns or that ███ improved the *Alexa Shopping* customer experience by reducing that same number of turns, Mr. Reed does not explain why these same assumptions should apply to use of non-shopping Alexa features allegedly implicated by the '681 patent. Mr. Reed ignores that typical Alexa interactions involve one-shot requests that do not require any added turns like "what's the weather" or "call Mom," while Alexa Shopping seeks to

interact with users over multiple steps from initial product search to final purchase. Alexa Shopping results in extended, multi-turn dialogs by design. Thus, Mr. Reed's reliance on ■ ■ or ■ purported improvements to *Alexa Shopping*, to calculate damages for *Alexa* is not "the product of reliable principles and methods." Fed. R. Evid. 702 (c). The Court should exclude Reed' from proffering his '681 patent royalty on that ground also.

    **B.    That Mr. Reed can make a ■ dollar math error and change his assumptions to arrive at the same result shows that his analysis is arbitrary, flawed, and unreliable.**

Mr. Reed's brazen attempt to recapture the damages lost due to his "math error" through a new methodology and manufactured assumptions also renders his opinion unreliable and inadmissible. *Daubert*, 509 U.S. at 597. Mr. Reed testified that, aside from his ■ lower user growth input—which should be ■ after correction of his math error—all other assumptions in his opening report were correct. (Ex. 3, Reed Dep. Tr. 71:19-73:12; Ex. 2, Reed Reply Rep. at 13-18 (accepting "math error" but denying remaining critiques by Amazon's damages expert)). But determined to arrive at his desired outcome—an inflated damage estimate of ■—Mr. Reed simply conjured up *new* assumptions to arrive at the same number. Mr. Reed replaced *actual* growth rates for Alexa with an *expected* growth rate ■, which reflects growth due to ■, not any contribution of the patents. This results-based methodology shows that his analysis, and the assumptions that underly it, are flawed, arbitrary, and unreliable—not "the product of reliable principles and methods." Fed. R. Evid. 702(c); *see also Daubert*, 509 U.S. at 597. The Court should exclude Mr. Reed's testimony on this ground also.

**V.    CONCLUSION**

For all these reasons, Amazon requests an order excluding the expert testimony of Mr. Reed because he fails to meet the threshold admissibility standard under Federal Rule of Evidence 702 and *Daubert*.

*Of counsel:*

J. David Hadden, CSB No. 176148
dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
sshamilov@fenwick.com
Ravi R. Ranganath, CSB No. 272981
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
vsalmastlian@fenwick.com
Allen Wang, CBS No. 278953
awang@fenwick.com
Johnson Kuncheria, CSB No. 335765
jkuncheria@fenwick.com
Min Wu, CSB No. 307512
min.wu@fenwick.com
Jeffrey A. Ware, CSB No. 271603
jware@fenwick.com
Rebecca A.E. Fewkes, CSB No. 209168
rfewkes@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

Dated:  February 3, 2023

*/s/ Andrew C. Mayo*
Steven J. Balick (#2114)
sbalick@ashbygeddes.com
Andrew C. Mayo (#5207)
amayo@ashbygeddes.com
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Counsel for Defendants
Amazon.com, Inc., Amazon.com LLC, Amazon Web Services, Inc., A2Z Development Center, Inc. d/b/a Lab126, Rawles, LLC, AMZN Mobile LLC, AMZN Mobile 2 LLC, Amazon.com Services, Inc. f/k/a Amazon Fulfillment Services, Inc., and Amazon.com Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February, 2023, the attached **OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE UNRELIABLE TESTIMONY OF VB ASSETS' DAMAGES EXPERT BRETT REED** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Ian R. Liston, Esquire<br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>222 Delaware Avenue, Suite 800<br>Wilmington, DE 19801 | VIA ELECTRONIC MAIL |
| Edward G. Poplawski, Esquire<br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>633 West Fifth Street, Suite 1550<br>Los Angeles, CA 90071-2027 | VIA ELECTRONIC MAIL |
| James C. Yoon, Esquire<br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>650 Page Mill Road<br>Palo Alto, CA 94304 | VIA ELECTRONIC MAIL |

/s/ Andrew C. Mayo

Andrew C. Mayo

{01879377;v1 }