IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VB ASSETS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1410 (MN) |
| | ) |
| AMAZON.COM SERVICES LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Neal C. Belgam, Jason Z. Miller, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; James C. Yoon, Ryan R. Smith, WILSON SONSINI GOODRICH & ROSATI P.C., Palo Alto, CA; Matthew A. Macdonald, Jamie Otto, Alexander J. Turner, WILSON SONSINI GOODRICH & ROSATI P.C., Los Angeles, CA; Bradley T. Tennis, WILSON SONSINI GOODRICH & ROSATI P.C., Washington, DC; Mikaela E. Evans-Aziz, WILSON SONSINI GOODRICH & ROSATI P.C., San Francisco, CA – Attorneys for Plaintiff.

Steven J. Balick, Andrew C. Mayo, ASHBY & GEDDES, P.A., Wilmington, DE; J. David Hadden, Ravi R. Ranganath, Vigen Salmastlian, Saina S. Shamilov, FENWICK & WEST LLP, Mountain View, CA – Attorneys for Defendant.

December 12, 2024
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is Plaintiff VB Assets, LLC's post-trial motion for an ongoing royalty. (D.I. 300).[1] For the reasons that follow, the Court will award Plaintiff an ongoing royalty of $0.25 for the '176 and '097 patents per net new Alexa shopping user, and $0.45 for the '681 patent per net new Alexa user.

**I.      BACKGROUND**

The Court presided over a five-day jury trial from November 2, 2023 to November 8, 2023. (*See* D.I. 303-307 ("Tr.")).  At trial, Plaintiff VB Assets, LLC ("Plaintiff" or "VB Assets") alleged that Amazon.com Services LLC ("Defendant" or "Amazon") infringes claim 13 of U.S. Patent No. 8,073,681 ("the '681 patent"), claim 25 of U.S. Patent No. 9,626,703 ("the '703 patent"), claim 40 of U.S. Patent No. 7,818,176 ("the '176 patent") and claim 23 of U.S. Patent 9,269,097 ("the '097 patent") (collectively, "the asserted claims").  At the end, the jury found that Amazon willfully infringes all the asserted claims, and that Amazon failed to prove that the asserted claims are invalid.  (D.I. 291).  The jury also adopted the damages award calculated by Plaintiff's damages expert, Mr. Reed, and awarded Plaintiff $46,700,000 in reasonable royalty damages.  (*Id.* at 7; Tr. 511:23).

On December 6, 2023, Amazon filed a renewed motion for judgment as a matter of law on infringement, willful infringement and validity of all the asserted claims. (D.I. 298).  That same day, VB Assets filed a motion for an ongoing royalty, pre-judgment interest, post-judgment interest and enhanced damages. (D.I. 300).  In that motion, VB Assets requested "an ongoing

---

[1]   Plaintiff filed its motion for an ongoing royalty, pre-judgment interest, post-judgment interest and enhanced damages on December 6, 2023 (D.I. 300).  In the Court's September 30, 2024 Memorandum Opinion (D.I. 325), the Court granted Plaintiff an ongoing royalty but required that the parties submit additional briefing to determine the amount of the ongoing royalty.

royalty for Amazon's continuing patent infringement at the same rate that the jury found at trial" – $0.40 per net new Alexa user for the '681 patent and $0.22 per net new Alexa Shopping user for the '176 and '097 patents[2] ("the jury-awarded rate(s)").  (D.I. 301 at 5).

The Court decided both motions in its September 30, 2024 Memorandum Opinion (D.I. 325).  In its opinion, the Court granted-in-part Amazon's renewed motion for judgment as a matter of law with respect to infringement of claim 25 of the '703 patent but denied the motion on all other grounds.[3]  (*Id.*).  More relevant here, the Court determined that VB Assets was entitled to an ongoing royalty.  The Court, however, found that Plaintiff "failed to present the Court with information on how circumstances have changed" and, thus, the Court was "ill-equipped to assess whether the jury's awarded royalty rate would be an appropriate rate for the ongoing royalty." (*Id.* at 54).  Accordingly, the Court ordered the parties to submit further briefing on the issue. (D.I. 326 at 2).

On October 10, 2024, VB Assets filed its supplemental brief regarding an ongoing royalty rate. (D.I. 327).  VB Assets presently requests an ongoing royalty of $0.60 for the '681 patent and $0.25 for the '176 and '097 patents.  (D.I. 327 at 2).  Amazon filed its answering brief on October 31, 2024.  (D.I. 334).  Amazon argues that both VB Assets' requested rates and the jury-awarded rates lack merit and are overstated.  Amazon requests the Court award Plaintiff an unspecified but lower royalty rate.

---

[2]  Mr. Reed designated the '176 and '097 patents, together, as "the Voice Ad patents." He determined that a reasonable royalty of $0.22 applies when the Voice Ad patents are infringed by Amazon. (Tr. 511:11-15). The Court's award likewise reflects Mr. Reed's collectivization of those patents.

[3]  As a result of granting the motion with respect to claim 25 of the '703 patent, the Court reduced the jury's reasonable royalty award to $40,007,600. (D.I. 325 at 29).

2

For the reasons explained below, the Court awards VB Assets an ongoing royalty rate of $0.25 for the '176 and '097 patents, and $0.45 for the '681 patent.

## II. LEGAL STANDARD

Following a determination that a patent is valid and infringed, the district court retains "equitable discretion to determine whether an ongoing royalty need be imposed." *ArcherDX, LLC v. Qiagen Sciences, LLC*, C.A. No. 18-1019 (MN), 2022 WL 4597877, at *14 (D. Del. Sept. 30, 2022). An ongoing royalty serves as an appropriate mechanism to compensate a prevailing patentee for any continuing infringement. *See Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 448-49 (D. Del. 2023). To calculate the ongoing royalty rate, "a jury's verdict of a reasonable royalty rate is the 'starting point.'" *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 2017-1060, -1093, 2017 U.S. App. LEXIS 6089, at *5 (Fed. Cir. Mar. 31, 2017). Then, the district court "should consider the 'change in the parties' bargaining positionings, and the resulting change in economic circumstances, resulting from the determination of liability.'" *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). The Federal Circuit has "also instructed district courts to consider changed economic circumstances, such as changes related to the market for the patented products." *XY, LLC*, 890 F.3d at 1297. The focus on "changed circumstances is particularly important when [ ] an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement." *Id.* The burden of proving damages for an ongoing royalty remains with the patentee. *See Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009) ("When injunctive relief is denied . . . and the Court instead considers whether an infringer should pay an ongoing royalty, the Court finds that the burden of proving damages remains with the patentee.").

## III. DISCUSSION

VB Assets requests that the Court award it an ongoing royalty of $0.25 for the '176 and '097 patents and $0.60 for the '681 patent. This request reflects an increase from the jury-awarded royalties, which were $0.22 for the '176 and '097 patents and $0.40 for the '681 patent. VB Assets argues that several changed circumstances justify an increase from the jury-awarded rates: "(1) Amazon's reliance on the patented technology for growth and post-verdict product development; (2) Amazon's increasing costs to attract and retain users as its market matures; and (3) Amazon's post-verdict infringement." (D.I. 327 at 3). Amazon, however, argues that "changed circumstances weigh strongly towards a much smaller rate" because the accused product transitioned to a new non-accused model, and it has experienced decreased losses on the accused products. (D.I. 334).

### A. The '176 and '097 Patents

VB Assets requests an ongoing royalty of $0.25 for the '176 and '097 patents. VB Assets primarily argues this three-cent increase from the jury-awarded rate is warranted because "increased inflation in the 2021-2024 time period [drove] costs to a level approximately 12% above expectations." (D.I. 327 at 5 (citing D.I. 328, Ex. 4)). Although Amazon generally opposes an increase in the jury-awarded rate, it fails to address this argument. The Court finds that in a post-verdict hypothetical negotiation, the parties would recognize and account for an increase in costs since the time of infringement. *See Paice LLC v. Toyota Motor Corp.*, 609 F.Supp.2d 620, 631 (E.D. Tex. 2009) (adjusting the ongoing royalty rate for inflation); *see also Comcast IP Holdings I, LLC v. Sprint Communs. Co. L.P.*, No. 12-cv-0205-RGA, 2015 WL 4730899, at n.3 (D. Del. Aug. 10, 2015) (observing that "sophisticated parties" "would negotiate some built-in adjustment to account for inflation."). Accordingly, the Court awards VB Assets a $0.25 ongoing royalty for the '176 and '097 patents.

B. **The '681 Patent**

VB Assets also requests an ongoing royalty of $0.60 for the '681 patent. Previously, VB Assets requested an ongoing royalty of $0.40, which was the rate calculated by Mr. Reed and adopted by the jury. Mr. Reed calculated the $0.40 rate by multiplying 2% by $20. The first variable, 2%, reflects the "measure for the apportionment of the cost savings to the [advantages] of the patented technology." (Tr. 506:10-14). The second variable, $20, represents the "value" Amazon ascribed to the patent through analyzing the amount of money Amazon *lost* when it sold the accused product (the Echo) to customers.[4] (Tr. 503:17-504:6).

VB Assets argues that an increase in the jury-awarded rate is justified because Amazon's losses from selling the Echo devices have increased. Mr. Reed estimates that, following the verdict, Amazon's losses were at least $30. (D.I. 328, Ex. 3). This $10 increase in losses would translate into a 50% increase in the ongoing royalty rate (*i.e.*, from $0.40 to $0.60) using the methodology adopted by the jury. (D.I. 327 at 5). In response, Amazon argues that Mr. Reed's loss estimate is flawed because his loss calculations rely on discounted, Prime Day prices for the Echo products. (D.I. 334 at 2). Upon analyzing Mr. Reed's calculations, however, the Court finds that Mr. Reed did not use the discounted Prime Day prices to calculate the Echo losses.

In his calculations, Mr. Reed observes that "current prices from Amazon.com" in October 2024 – immediately prior to Prime Day – were discounted, but Mr. Reed does not use those prices to calculate his $30 loss figure. (D.I. 328, Ex. 3 at 2). The $30 loss figure was calculated through using the average price of the Echo devices from 2020 until April 2022. (*Id.*

---

[4] Rather than analyzing the profit from the accused product, Mr. Reed looked at the "benefit of the infringed technology to Amazon through [examining its] reduced need for discounting and promotion to grow or maintain its user base." (D.I. 327 at 3 (referencing Tr. 492:17-493:3). Mr. Reed opined that the more money Amazon was willing to lose on a product, the more valuable that product must be to Amazon.

(citing D.I. 328, Ex. 5) (chart of average prices for Echo devices from 2020 until 2022)). Therefore, the Court rejects Amazon's assertion that the loss calculation was based on skewed, Prime Day sale prices.

Nevertheless, Amazon presents competing evidence that demonstrates Amazon losses were decreasing at the time of the hypothetical negotiation. For example, Amazon asserts that it increased Echo prices in October 2023, immediately prior to the hypothetical negotiation. (D.I. 336, Ex. A at 8-9). As a result, Amazon projected that Echo losses would "improve from almost $20-$25 losses per unit over the 2021-2023 time period to losses of $6.81 per unit by 2026." (D.I. 335 ¶ 2 (e)(iii) (citing D.I. 336, Ex. A at 9)). Therefore, the parties at the hypothetical negotiation may have decreased Mr. Reed's loss variable, resulting in a lower royalty rate.

Additionally, Amazon argues that the ongoing royalty rate would be lower because it transitioned to a "new, non-accused large-language model architecture." (D.I. 334 at 2). Immediately prior to the hypothetical negotiation, Amazon planned to shift away from the accused technology and invest in new, non-infringing alternatives. (*See* D.I. 336, Ex. A at 3 (Amazon internal document's reflecting that the 2024 Operating Plan was to "radically redeploy" its resources to invest in Remarkable Alexa.)). This shift would have led to a decrease in Amazon's demand for the claimed technology, and thus improved its bargaining position in a post-verdict hypothetical negotiation. Plaintiff, however, counters that "Amazon offers only speculation that it may, hypothetically, at some unknown date, redesign" and Amazon "unveils new models of these infringing products every year." (D.I. 318 at 9 (citing D.I. 302, Ex. 4) (Amazon press announcement of new Amazon Echo products in 2023)).

In light of the aforementioned competing evidence, the Court is not convinced that the parties would have agreed to a $0.60 ongoing royalty for the '681 patent. Plaintiff has not

persuaded the court that changed economic circumstances warrant a 50% increase in the jury-awarded rate, and, Defendant, has likewise not met its burden of proving that post-verdict economic favors have shifted so strongly in its favor as to discredit the jury's original award. The Court, however, finds that "increased inflation in the 2021-2024 time period driving costs to a level approximately 12% above expectations would itself support a larger royalty rate of $0.45 for the '681 patent." (D.I. 327 at 5 (citing 328 ¶¶ 4-5 (Reed Declaration)); (*see also* D.I. 328, Ex. 4 (Annual Inflation and Impact of Unexpected Increases 2021 to 2024 from the Federal Reserve Bank of Minneapolis)). As stated above, *see supra* Section III.A, this argument has not been rebutted by Amazon, and the Court believes that the parties would consider increased costs when hypothetically negotiating an ongoing royalty. Therefore, the Court will award VB Assets a $0.45 ongoing royalty for any continuing infringement of the '681 patent.

### C. Other Arguments

In addition to the arguments above, Amazon argues the ongoing royalty rates should be less than the jury-awarded rates because "Plaintiff ignores VoiceBox's $5-10 million offers to sell the asserted patents in 2017" and "Plaintiff's proposed royalty bases improperly include predominately non-infringing activities." (D.I. 334 at 4-5). The jury, however, previously heard, considered and rejected this evidence when adopting Mr. Reed's proposed royalty rates.[5] Further, the Court does not find that either of these arguments constitute a "changed circumstance," which would impact the hypothetical negotiation post-verdict. *See Saint Lawrence Communs. LLC v. Motorola Mobility LLC*, Case No. 2:15-cv-351-JRG, 2017 WL 6268735, at *4-5 (E.D. Tex. Dec. 8, 2017) (finding that arguments presented to the jury are not "changed circumstances" for

---

[5] At trial, the jury heard that VoiceBox entertained $5-10 million offers to sell the asserted patents. (*See* Tr. 513-515 (Mr. Reed discussing the sale offers); Tr. 802-804 (Amazon's expert, Dr. Ugone discussing the sale offers)). The jury likewise heard Mr. Reed discuss his calculations and methodology. (*See* Tr. 243-258, 419-420, 502-503, 511, 530-534).

7

purposes of an ongoing royalty). Therefore, Amazon fails to persuade the Court that the ongoing royalty rates should be decreased for any other reason.

## IV.     CONCLUSION

For the reasons explained above, the Plaintiff is awarded an ongoing royalty of $0.25 for the '176 and '097 patents per net new Alexa shopping user, and $0.45 for the '681 patent per net new Alexa user. An appropriate order will follow.